## TIMKEN *v.* OLIN *et al.*

(*Circuit Court, S. D. Ohio, W. D.* June 15, 1888.)

1. PATENTS FOR INVENTIONS—VALIDITY—CARRIAGE SPRINGS.

Letters patent No. 197,689, issued November 27, 1877, to Henry Timken, for an improvement in carriage springs, which consist in the attachment of springs to the bottom of the body of a buggy or wagon, at the sides and crossing the bottom of the body, and connecting with the side-bars on the opposite sides of the body, are not void for want of novelty.

2. SAME.

Letters patent No. 239,850, issued April 1, 1881, to Cyrus W. Saladee, for improvements in road-wagons, which consist of a spring platform of flexion springs arranged in pairs,—the inner, heavier ends of each pair being connected side by side to the central portion of the body or object supported, and the flexion portion of each spring curving downward from the center, and then upward to its connection with the spring,—are valid.

3. SAME—REISSUE.

Letters patent No. 157,430, issued December 1, 1874, described an improvement in vehicles, consisting in the employment of two independent crossed leaf metal springs, the ends of which were rigidly secured to the opposite ends of a cross-piece attached to the body, each spring being formed or provided with a socket, and the two sockets meeting each other at the center of the cross-piece, so as to enable the axis or pivot-bolt to be passed through both sockets, etc. Reissued letters patent, January 25, 1881, described each spring as "preferably" formed with a socket, and added a claim for two springs, in combination with the body and side-bars, crossing each other side by side, and attached to the cross-piece. *Held,* that the reissue was not an enlargement.

4. SAME—ANTICIPATION—PRESIDENT WASHINGTON'S COACH.

The foregoing patents are not anticipated by the compound couplings supporting the driver's seat, shown in President Washington's coach, as that was nothing more than an old-fashioned thorough-brace, intended "to prevent as much as possible the side, end, and upward pitching of the seat," which it failed to accomplish, and which complainant's inventions do accomplish more effectually than anything that preceded them.

In Equity.

*Wm. M. Eccles* and *William Hubbell Fisher*, for complainant.

*Wm. H. Doolittle* and *Geo. J. Murray*, for defendants.

SAGE, J. The complainant's suit for infringement is based upon three patents.

(1) No. 197,689, to Henry Timken, for improvement in carriage springs, dated November 27, 1877, application filed October 27, 1877. The invention consists, as stated in the specification, in the attachment of springs to the bottom of the body of a buggy or wagon, at the sides, and crossing the bottom of the body, and connecting with the side-bars on the opposite sides of the body. The claim is:

"In combination with the side-bars, C, C, and body, D, the springs, G, G, attached to the under side of the body at opposite sides, then crossing each other, and connected to the side-bars, at opposite sides, substantially as herein set forth."

(2) No. 239,850, to Cyrus W. Saladee, for improvements in road wagon, dated April 1, 1881, application filed February 7, 1881. This invention

consists, according to the specification, of flexion springs, the inner ends of which terminate at and are attached to the bottom of the body, seat, or other object which they are to support, at or near its center, and their outer ends are connected to the side-bars or frame on opposite sides. The claim is as follows:

"A spring platform consisting of flexion springs arranged in pairs, the inner, heavier ends of each pair being connected side by side to the central portion of the body or object supported, and the flexion portion of each spring curving downward from the center, and then upward to its connection with the frame, all substantially as set forth."

(3) No. 9,542, reissue to Joseph Tilton, Jan. 25, 1881, upon application dated Nov. 27, 1880, (original No. 157,430, dated Dec. 1, 1874,) for spring for vehicles. The patentee sets forth in his specification that his invention consists in the employment of two independent crossed leaf metal springs, the ends of which are rigidly secured to the opposite ends of a cross-piece attached to the body, each spring preferably being formed or provided with a socket, and the two sockets meeting each other at the center of the cross-piece attached to the body, so as to enable an axis or pivot bolt to be passed through both sockets for enabling the springs to turn thereon when the body is elevated or depressed. A further feature of the invention consists in securing a bearing and re-enforcing plate of metal to the under side of the cross-piece attached to the body, said plate being provided with pendent flanges at both ends, to serve as bearing points for the ends of the springs, in order to prevent any lateral movement of the same, and to serve, in connection with fastening bolts, to securely hold the springs in place. The claims are as follows:

"(1) The combination of two springs, each composed of one or more leaves, and hinged together at their crossing points, and provided with an eye at one end to connect with the side-sills of the running gear, and at the other end connected with a cross-piece attached to the body of the vehicle, substantially as described. (2) The two leaf springs, each provided with a socket at their crossing point, in combination with a pivot or axis bolt, substantially as described. (3) The combination of two springs, side by side, and connected together, with the side sills, and cross-piece, for supporting the body in a horizontal position between the side-sills, substantially as described. (4) The re-enforcing bearing plate, 1, having end flanges, in combination with the cross-piece attached to the body, and the connected cross-springs, substantially as described. (5) In combination with the body of a vehicle and the side-sills or bars, the two springs crossing each other side by side, and attached to a cross-piece, substantially as described."

The Tilton and Saladee patents became, by assignment, the property of the complainant; the Tilton patent on the 22d March, 1881, and the Saladee on the 8th of December, 1884. A careful examination of the record has confirmed the impression made by the very full and complete argument at the hearing, and has brought the court to the following conclusions:

1. The combination patented to Timken displays invention. It is not anticipated by any of the devices in evidence for the defendants. This view is strongly re-enforced by the fact, found from the record, of the

general recognition of the invention by the trade, and the large and long continued demand for it.

2. The Saladee patent displays invention and is valid.

3. The Tilton reissued patent is valid. The introduction of the word "preferably" in the specification did not invalidate the reissue, nor did the addition of the fifth claim.

4. The defendant infringes the Timken patent, the Saladee patent, and the second, third, and fifth claims of the Tilton reissue patent.

The decree will be accordingly, for an injunction and account, with costs.

---

### ON APPLICATION FOR REHEARING.

#### (October. 2, 1888.)

SAGE, J. This is not a case for rehearing. Because the court, responding to the request of counsel for an early decision, limited the opinion to a statement of conclusions, counsel for defendants erroneously infer that the state of the art preceding the inventions and patents sued upon, and the patents introduced in evidence as anticipating the complainants, were overlooked, and therefore proceed to reargue the points which they argued at length orally on the hearing, and also in their printed briefs.

As to the proposition that "the defendants were led to believe from the testimony introduced by complainant in rebuttal that the Tilton and Saladee patents would not be relied upon at the hearing, and were therefore taken by surprise," there are two answers: *First.* They were bound to anticipate and be prepared for every point that could be made upon the evidence; and, *second*, upon their request they were given time to prepare, and were allowed to file an additional brief after the hearing, thereby having ample opportunity to recover from the surprise, to which they cannot now be allowed to appeal for a rehearing.

The court is not disposed to respond favorably to the appeal of counsel that it will, in passing upon the petition for rehearing, enter into the details of the record, and prepare a full opinion. That would be in the line of establishing a bad and mischievous precedent, and in view of the brief filed by counsel for defendant, rearguing the entire cause, it would be, in effect, granting the rehearing, while in terms denying it. The court will, however, say that it rejected the testimony of the witness Priest as altogether unreliable, the record making it clear, not only that he contradicted himself **on** material points, under circumstances causing his contradictory statements to amount to impeachment, but also that in a prior litigation between complainant and parties other than these defendants, and involving the patents in suit in this cause, he was in the market as a witness for sale to either side.

Since the filing of the petition for rehearing, the court has, upon defendants' application, opened the testimony, and permitted them to offer a stipulation and exhibits relating to a device which they claim anticipates, or at least limits, each of the patents in suit. This is President

Washington's coach, which was sold to a relic collector of New York city at some time between the date of the death of President Washington and the year 1870, as a coach which he used in his life-time. It was exhibited as a relic at Wood's Museum in Philadelphia, in 1855, at the Centennial Exposition at Philadelphia in 1876, and at the Centennial Exposition at Columbus, Ohio, in the fall of 1888. The complainant visited the Centennial Exposition at Philadelphia, but he testifies that he did not see or hear of this coach then, nor at any other time until the fall of 1888. The defendants insist that the compound couplings supporting the driver's seat, and the frame-work to which their light ends connect, anticipate, or at least limit, each of the patents sued upon. Each of these couplings is composed of two steel leaves, the lower one of which is slightly curved up at the end, and of a long leather strap. The curve of the lower steel leaf, at its end, is to prevent its cutting into the leather strap in its action. There is also near the end of the lower steel leaf a metal loop, fastened to and passing over the steel, and then down under and around the leather strap, loosely enough to permit its play back and forth, and to permit the leaves also to move back and forth when the coupling was in action. The leather strap, which is long and heavy, is attached to the driver's seat, at the same points where the steel parts of the coupling are attached. At the other or outer end it is attached to the side of the frame-work already referred to, by passing around its end, and forming a loop. Doubling back on itself, it is confined or held together by bolts provided with thumb-nuts and metal washers. The strap is provided with holes adapted to receive the bolts, and so located as to permit tightening, whenever that might be necessary, as it is stated in the stipulation, "to prevent, as much as possible, the side, end, and upward pitching of the seat." Without entering further into details, the last expression quoted above from the stipulation is the key to the radical difference between this coupling and the invention covered by complainant's patents. They are surprisingly alike in appearance, as shown by photographs, but the coupling is nothing more than an old-fashioned thorough-brace, long since out of date, and discarded from general use. The trouble with it is, or was, that it would not prevent the pitching of the seat upwards and sideways and endways. The complainant's inventions do prevent that very thing, and that, too, more effectually than anything that preceded them. They have been for many years recognized as valuable and patentable inventions by practically the entire body of carriage makers in the United States, who have paid in royalties to the complainant for their use more than $800,000. What better confirmation is needed of the proposition that there is something more than skill or mere adaptation in the complainant's improvements? The decree as indicated by the opinion on file will be entered for an injunction and account, excepting that by mistake the second, third, and fifth claims of the Tilton reissued patent are specified as the claims infringed, instead of the third, fourth, and fifth claims, which are those infringed. The decree will be accordingly.